UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | |
|---|---|
| **RENEE STRINGER ET AL** | **CASE NO. 3:19-CV-00343** |
| **VERSUS** | **JUDGE TERRY A. DOUGHTY** |
| **TOWN OF JONESBORO ET AL** | **MAG. JUDGE KAREN L. HAYES** |

**REPORT AND RECOMMENDATION**

Before the undersigned Magistrate Judge, on reference from the District Court, is a motion to dismiss filed by Defendants, the Town of Jonesboro and former Mayor James Bradford, in his official and individual capacities. The motion is opposed.

The undersigned recommends granting defendants' motion and dismissing all claims. Because Louisiana is actively prosecuting an action under a statute comparable to the Clean Water Act ("CWA"), the citizen suit should be dismissed. In addition, the takings claim, the first amendment retaliation claim, and the conspiracy claim should be dismissed as untimely.

**Background**

This case revolves around the alleged discharge of raw, untreated sewage in various parts of Jonesboro, including onto plaintiff Renee Stringer's property. It also involves allegations former Mayor James Bradford refused to fix the problem because Stringer ran against him for mayor in 2014. Stringer brings four claims.

First, she brings an enforcement action under the citizen suit provision of the CWA. (Pl's Am. Compl. pp. 1-2). Stringer alleges that "since at least 2010, Jonesboro's sewerage system has intermittently discharged raw, untreated sewage in various parts of the town, in or near residential areas that surround Jonesboro's sewage lift stations." *Id*. Stringer claims that since 2013 the alleged sewage discharges have occurred in an area that flows to a ditch, then a creek, and then to a

1

tributary and river, the effect of which is a discharge of pollutants into waters of the United States. *Id.*

Second, she asserts a claim under 42 U.S.C. § 1983 for defendants' violation of the Takings Clause of the Fifth Amendment. Stringer alleges that since November 2011 she has suffered numerous takings of her private property for public purposes without compensation by the Town of Jonesboro. *Id.* at 11. Jonesboro's sewage system caused discharges and flooding on her property during heavy rains, interfering with Stringer's ability to enjoy the use of her appliances and water supply. *Id.* at 11-15.

Third, she asserts a claim under 42 U.S.C. § 1983 for First Amendment Retaliation, alleging former Mayor Bradford ignored her complaints about the sewage problem because she ran against him in the 2014 mayoral election. Stringer alleges that in early 2015, the Louisiana Department of Environmental Quality ("LDEQ") sent letters to the Town of Jonesboro, addressed to then-Mayor Bradford, identifying several non-compliance issues related to the sewerage system in Jonesboro, including Stringer's complaint. (Pl.'s Am. Compl. ¶ 99). From 2015 through 2018, Mayor Bradford engaged in conduct with others known and unknown to avoid enforcement provisions of both federal and state law that caused harm to Stringer. *Id.* at ¶ 100. Bradford prioritized the repairs of other residents and resident businesses over Stringer's repairs and took steps to conceal and delay enforcement actions by the appropriate authorities when Stringer made complaints to said authorities. *Id.* at ¶ 105.

Fourth, she asserts a conspiracy claim under 42 U.S.C. § 1985, alleging Mayor Bradford "engaged in activities with others in order to deceive the LDEQ as to the issues concerning the sewerage in order to avoid enforcement actions against the Town further depriving Stringer of her constitutional rights." *Id.* at pg. 17. Stringer alleges the conspiracy occurred from 2015-2019. *Id.*

Prior to Stringer's complaint, the Louisiana Department of Health ("LDOH") initiated an action to stop the discharge of unwanted sewage. It inspected the situation on August 28, 2017, and September 13, 2017, and found the following: (1) sewage disposal in a manner which is compliant with the Sanitary Code is not being provided at Jonesboro Sewerage System; (2) raw sewage is being discharged from a broken line at 848 Hodge School Road into a ditch and onto the surface of the ground and raw sewage is being discharged from a clean out of a private residence at 824 6th Street to prevent raw sewage from backing up into the private residence during rain events; and (3) the Jonesboro sewerage system was not being properly operated and maintained. [doc. # 33-2, pp. 13-14]. On January 11, 2018, it issued Compliance Order No. 2-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-REQ, requiring compliance and maintenance based on violations including the discharge on Stringer's property. Jonesboro did not comply with the Compliance Order, and LDOH filed a petition with Louisiana's Second Judicial District Court on June 21, 2019, to make the Compliance Order executory. This was granted on June 24, 2019. *Id*. at p. 1 On October 7, 2019, LDOH filed a Rule for Contempt because Jonesboro has failed to perform the remedial act required of it. *Id*. at pp. 40-42.

On March 18, 2019, Stringer filed her original complaint against the Town of Jonesboro, requesting relief pursuant to the CWA.[1] [doc. #1]. On August 2, 2019, Jonesboro filed an answer. On October 4, 2019, Stringer filed an amended complaint, adding former Mayor Bradford to the suit and the three claims under 42 U.S.C. § 1983 and § 1985. [doc. # 22].

On December 5, 2019, Bradford and Jonesboro filed a motion to dismiss for failure to state a claim. [doc. # 33]. On December 30, 2019, Stringer filed her memorandum in opposition. [doc.

---

[1] Plaintiff Lois Virginia Stringer passed away between the filing of the original complaint and the amended complaint. No successor party was substituted.

3

# 37]. On January 6, 2020, Bradford and Jonesboro filed their reply. [doc. # 39]. The motion is ripe.

### **12(b)(6) standard**

Federal Rule of Civil Procedure 12(b)(6) sanctions dismissal when a plaintiff fails "to state a claim upon which relief can be granted." A pleading states a claim for relief when it contains, *inter alia*, "a short and plain statement…showing that the pleader is entitled to relief." FED. R. CIV. P 8(a)(2).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed. 2d (2009)(quoting *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed. 2d 929 (2007)). A claim is facially plausible when it contains sufficient "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Plausibility requires more than just the "sheer possibility" that a defendant acted unlawfully, *id*.; it calls for enough facts "to raise a reasonable expectation that discovery will reveal evidence" to support the elements of the claim. *Twombly*, 550 U.S. at 556. Mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" do not suffice. *Id.* at 555.

Assessing whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its own judicial experience and common sense." *Iqbal*, *supra* (citation omitted). In deciding a Rule 12(b)(6) motion to dismiss, a court must accept as true all factual allegations, although the same presumption does not extend to legal conclusions. *Iqbal*, 556 U.S. at 678. A court may permit a well-pleaded complaint to proceed even when "actual proof of those facts is improbable" or recovery is unlikely. *Twombly*, 550 U.S. at 556. But a court will

dismiss a complaint "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679. Furthermore, "[t]he notice pleading requirements of Federal Rule of Civil Procedure 8 and case law do not require an inordinate amount of detail or precision." *Gilbert v. Outback Steakhouse of Florida, Inc.*, 295 Fed. Appx. 710, 713 (5th Cir. Oct. 10, 2008)(unpubl.)(citations and internal quotation marks omitted). "Specific facts are not necessary; the statement needs only 'give the defendant fair notice of what the…claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 127 S.Ct. 2197, 2200 (2007)(quoting *Bell. Atl.*, 127 S.Ct. at 1958).

When considering a motion to dismiss, courts generally are limited to the complaint and its proper attachments, *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008)(citation omitted), yet courts may rely upon "documents incorporated into the complaint by reference and matters of which a court may take judicial notice—including public records." *Dorsey*, *supra*; *Norris v. Hearst Trust*, 500 F.3d 454, 461 n9 (5th Cir. 2007)(citation omitted)(proper to take judicial notice of matters of public record). A court can take judicial notice of Louisiana state court actions. *See Salvation Army v. Union*, 2016 WL 5798987, at n. 7 (W.D. La. Jun. 23, 2016)(citing *Murchison Capital Partners, L.P. v. Nuance Communications, Inc.*, 625 F. App'x. 617, 618 (5th Cir. 2015)).

## Law and Analysis

### I. The Clean Water Act claim should be dismissed.

#### a. General standards for citizen suits under the Clean Water Act.

The CWA is the primary federal law governing water pollution. It was enacted "to restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251. 33 U.S.C. § 1365 governs citizen suits under the CWA. § 1365(a)(1) generally provides that

5

a citizen "may commence a civil action on his own behalf" against a person who either violates an effluent standard or limitation set forth in the Act or violates an order issued by the EPA administrator. But there are two restrictions because "the citizen suit is meant to supplement rather than supplant governmental action." *Gwaltney of Smithfield v. Chesapeake Bay Found.*, 484 U.S. 49, 60, 108 S.Ct. 376, 98 L.Ed.2d 306 (1987). First, no action may be commenced "if the Administrator [of the EPA] or State has commenced and is diligently prosecuting a civil or criminal action in a court of the United States, or a State to require compliance with the standard, limitation, or order." § 1365 (b)(1)(B). The second limitation is found in § 1319(g)(6), and in relevant part states that a violation "with respect to which a State has commenced and is diligently prosecuting an action under a State law comparable to this subsection…shall not be the subject of a civil penalty action under…section 1365 of this title." 33 U.S.C. § 1319(g)(6)(A)(ii). § 1319(g)(6)(A) is itself subject to an exception, which is set forth in § 1319(g)(6)(B):

> The limitations contained in subparagraph (A) on civil penalty actions under section 1365 of this title shall not apply with respect to any violation for which –
>
> (i) A civil action under section 1365(a)(1) of this title has been filed prior to commencement of an action under this subsection, or
>
> (ii) Notice of an alleged violation of section 1365(a)(1) of this title has been given in accordance with section 1365(b)(1)(A) of this title prior to commencement to an action under this subsection and an action under section 1365(a)(1) of this title with respect to such alleged violation is filed before the 120th day after the date on which such notice is given.

    b. <u>Louisiana is actively prosecuting Stringer's claims.</u>

Stringer contends Louisiana is not diligently prosecuting under a state statute comparable to the CWA. She points to two ways in which the law is not comparable: (1) LDOH is not the agency responsible for enforcing environmental laws and (2) the $3,000 penalty is not comparable.

The undersigned believes Stringer's first argument is without merit. Louisiana statutes specifically provide the office of public health "shall perform those functions of the state provided by law relating to environmental quality and pollution control which are related to the public health and which are specifically assigned to the department, including but not limited to functions relating to the treatment and disposal of sewage within the state." La. Rev. Stat. § 36:258(B). Louisiana statutes give the state health officer and LDOH exclusive jurisdiction, control, and authority over the treatment and disposal of municipal or domestic sewage. La. Rev. Stat. § 40:5(9).

It is equally clear that LDEQ, the agency which Stringer argues is solely responsible for enforcement of the CWA, shares authority with LDOH. In fact, Louisiana statutes state LDEQ shall "assume authority, *when such authority is delegated*, for the administration" of the CWA. La. Rev. Stat. 30:2011(D)(11)(emphasis added). Though LDEQ may be responsible for some of Louisiana's CWA responsibilities, it is not responsible for all. Louisiana clearly delegates authority for the treatment and disposal of sewage to LDOH.

The undersigned is also not persuaded by Stringer's argument about difference in penalty amounts. The CWA provides "the amount of a class I civil penalty under paragraph (1) may not exceed $10,000 per violation" and that to determine the amount the Administrator "shall take into account the nature, circumstances, extent and gravity of the violation, or violations, and with respect to the violator, ability to pay, any prior history of such violations, the degree of culpability, economic benefit or savings (if any) resulting from the violation, and such other matters as justice may require." 33 U.S.C. § 1319(g)(2)(A), (g)(3). Jonesboro is a town with less than 5,000 people. The undersigned agrees with defendants that a fine of $3,000 is substantial for a town the size of

Jonesboro. The CWA does not put a minimum penalty amount in place. Instead, the statute says the administrator shall determine the penalty via a myriad of factors, including ability to pay.

The Fifth Circuit has provided guidance on determining whether a state law is comparable to the CWA. "The primary function of the provision for citizen suits is to enable private parties to assist in enforcement efforts where Federal and State authorities appear unwilling to act." *Lockett*, 319 F.3d at 684 (quoting *N. & S. Rivers Watershed Ass'n, Inc. v. Town of Scituate*, 949 F.2d 552, 555 (1st Cir. 1992).) "In light of the primary role the state plays in enforcement, the requirement that a state law be 'comparable' to the federal statute should be read broadly to permit the states flexibility in deciding how to enforce anti-pollution laws." *Lockett*, 319 F.3d at 683. Stringer filed this complaint because she is concerned about the discharge of untreated sewage into residential areas. However, Louisiana has acted. LDOH, the state agency responsible for enforcing the sewage provisions, has been actively prosecuting the case. A review of the state proceedings reveals the enforcement action is ongoing. Federalism demands giving states latitude in their enforcement of environmental mandates, and it is not necessary that an environmental agency prosecute this violation. Louisiana is prosecuting the violations Stringer complains of. Her citizen suit fails.

    c. <u>The notice exception does not apply.</u>

As a last resort, Stringer claims the notice exception applies. Stringer says she provided the required notice of the alleged violations on December 17, 2018 and filed suit on March 18, 2019, less than 120 days later. Because Stringer claims the State did not file suit until June 21, 2019, she claims her suit is not barred by statute. This is mistaken. As defendants correctly point out, the State commenced its administrative action against Jonesboro before notice was filed, making the exception inapplicable.

Because the undersigned recommends dismissal on this ground, it is unnecessary to consider whether the claim is time-barred.

## II.     The Takings Claim should be dismissed.

Section 1983 states in pertinent part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory…subjects, or causes to be subjected, any citizen of the United States…to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable…

42 U.S.C. § 1983.

In *Wilson v. Garcia*, 471 U.S. 261, 276, 280 (1985), the United States Supreme Court held that § 1983 claims are best characterized as tort actions for personal injuries and that federal courts must borrow the statute of limitations governing personal injury actions in the state in which the action is brought. Stringer's §1983 claim is therefore governed by Louisiana's statute of limitations provision, which is one year. *See Elzy v. Roberson*, 868 F.2d 793, 794 (5th Cir. 1989). The prescriptive period "commences to run from the day injury or damage is sustained." La. Civ. Code 3492. "Although state law controls the statute of limitations for §1983 claims, federal law determines when a cause of action accrues." *Rodriguez v. Holmes*, 963 F.2d 799, 803 (5th Cir. 1992). "Under federal law, the limitations period commences when the aggrieved party has either knowledge of the violation or notice of facts which, in the exercise of due diligence, would have led to actual knowledge thereof." *Piotrowski v. City of Houston*, 51 F.3d 512 (5th Cir. 1995)( quoting *Vigman v. Community National Bank and Trust Co.*, 635 F.2d 455, 459 (5th Cir. 1981)). The Fifth Circuit has approved Louisiana's one-year personal injury statute of limitations provided by La. Civ. Code Ann. art 3492 in a § 1983 action. *See Lavellee v. Listi*, 611 F.2d 1129 (5th Cir. 1980). Accordingly, Stringer was required to have filed suit within one year of the date that she

became aware that she had suffered injury or had sufficient information to know she had been injured.

Defendants argue the Takings Claim is time barred because it falls outside of the one-year statute of limitations. Defendants also point out that under Louisiana law, the tort is not a continuing one. Stringer argues that the tort is ongoing but fails to provide the Court with citation to any law supporting this assertion.

An exception to the one-year prescriptive period is the recognized doctrine of continuing tort. *Risin v. D.N.C. Investments, L.L.C.*, 2005-0415 (La.App. 4 Cir. 12/7/05), 921 So.2d 133, 136. The continuing tort exception only applies when continuous conduct causes continuing damages. *Id*. In *Pracht v. City of Shreveport*, the Court of Appeals for the Second Circuit determined that separate instances of flooding did not constitute a continuous tort. 36, 504 (La. App. 2 Cir. 10/30/02), 830 So. 2d 546, 551. Other federal courts in Louisiana have applied this rule and determined separate instances of flooding did not constitute a continuous tort. *See, e.g., Delaney v. Union Pacific RR. Co.*, 2011 WL 838905, at ** 2-3 (E.D. La. Mar. 4, 2011); *Guillory v. St. John the Baptist Parish*, 2010 WL 2522998, at * 3 (E.D. La. Jun. 14, 2010). The undersigned agrees and believes the flooding of Stringer's property does not constitute a continuous tort.

Stringer's complaint indicates that starting in November 2011, the property's flooding negatively affected her use and enjoyment of the property. Because of the effects she describes, she undoubtedly had knowledge of the flooding starting in November 2011. She did not file this claim within the one-year statute of limitations and thus her claim is time-barred. Given that the claim is time-barred, it is unnecessary to determine whether Stringer sufficiently makes out a claim.

  **III.**  **The First Amendment retaliation claim should be dismissed.**

Defendants argue the First Amendment retaliation claim is untimely. In response to defendants' argument her claim is time-barred, Stringer again claims the "continuing tort" doctrine applies because the retaliation occurred until Bradford left office in 2019. This is mistaken. Stringer cannot use a continuing violation theory because the alleged acts of retaliation are discrete acts that are almost always actionable. In *Rutan v. Republican Party of Illinois*, the Supreme Court held that the First Amendment provides state employees with an actionable First Amendment retaliation case for "even an act of retaliation as trivial as failing to hold a birthday party for a public employee…when intended to punish her for exercising her free speech rights." 497 U.S. 62, 76, n.8 (1990)(internal quotations and citations omitted). Instances of retaliation for exercising First Amendment rights are almost always actionable and they constitute discrete acts which do not admit of aggregation for purposes of pressing a continuing violation argument. *Van Heerden v. Board of Supr's of Louisiana State University and Agr. and Mechanical College*, 2011 WL 5008410, at * 8 (M.D. La. Oct. 20, 2011); *see also O'Connor v. City of Newark*, 440 F.3d 125 (3d Cir. 2006)(disallowing aggregation of discrete retaliatory acts for purposes of statute of limitations when actions related to § 1983 First Amendment retaliation claim).

The statute of limitations started to accrue in 2015, when Stringer alleges the retaliation commenced. At that point, Stringer had knowledge of the violation and could have proceeded with her claim. By 2016, the statute of limitations had run and the retaliation claim was no longer viable. Because the claim is time-barred, there is no need to consider whether she states a valid claim.

## IV. The 42 U.S.C. § 1985 conspiracy claim

Defendants argue that the conspiracy claim should be dismissed because it is untimely and because plaintiff failed to allege sufficient facts to support the claim. The court agrees and recommends dismissal.

      a. <u>The conspiracy claim is time-barred.</u>

Stringer summarily opposes this assertion. Stringer does not allege any facts regarding the alleged conspiracy, only stating that it began in 2015. The one-year statute of limitations applies to this claim, and the cause of action accrued in 2015.[2] Because Stringer brought this claim well after the one-year statute of limitations expired, it should be dismissed with prejudice.

      b. <u>The conspiracy claim is factually insufficient.</u>

Stringer also fails to plead facts required to make out a conspiracy claim. Congress passed what is now known as 42 U.S.C. § 1985 as part of the Civil Rights Act of 1871. *United Bhd. of Carpenters & Joiners of Am., Local 610 v. Scott*, 463 U.S. 825, at 837 (1983). Its primary purpose was to "combat the prevalent animus against [blacks] and their supporters." *Id*. at 836. § 1985(3), which is applicable to this case, provides a cause of action for a conspiracy by two or more persons to deprive one of "equal protection of the laws, or of equal privileges and immunities under the laws." 42 U.S.C. § 1985. For her § 1985(3) claim to succeed, Stringer must prove the following elements:

> (1) A conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States. *United*, 463 U.S. at 828-29 (1983)(citing *Griffin v. Breckenridge*, 403 U.S. 88, 102-03 (1971)).

Her claim is factually insufficient for two reasons. First, she fails to offer any facts supporting the existence of a conspiracy. Instead, she offers a conclusory statement—Bradford, along with others known and unknown, conspired through their acts to deceive the LDEQ to avoid fines and enforcement actions against Stringer. Second, her use of § 1985(3) is misplaced. In *United Bhd. of Carpenters & Joiners of Am., Local 610 v. Scott*, the Supreme Court set forth that a § 1985(3)

---

[2] Stringer pleads no facts suggesting that she did not have knowledge of the conspiracy until a later date.

12

claim for depriving a person of their equal protection or equal privilege and immunities must show "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." 463 U.S. at 834 (quoting *Griffin*, 403 U.S. at 102). The animus in this complaint stems from an alleged retaliation by Bradford against Stringer because Stringer ran against him in a mayoral election. Such animus is clearly not the racial or class-based animus required to make out a Section 1985(3) claim.

### V. Mayor Bradford should be dismissed from the suit.

Defendants argue Mayor Bradford, in his official capacity, should be dismissed from the suit because a suit against him is redundant. In response, Stringer agrees but asks the court to dismiss these claims without prejudice because it may become possible to sue Bradford in his personal capacity.

"A judgment in a Section 1983 lawsuit against an official in his official capacity imposes liability against the entity he represents." *Broussard v. Lafayette City-Parish Consolidated Government*, 45 F. Supp. 3d 553, 571 (W.D. La. 2014)(citing *Deshotels v. Villiage of Pine Prairie*, No. 11—CV—2052, 2012 WL 1712358, at *4 (W.D. La. Apr. 13, 2012)). Therefore, it is "well settled that a suit against a municipal official in his or her official capacity is simply another way of alleging municipal liability." *Broussard*, 45 Supp. 3d. at 571 (internal citations omitted). When, as here, the government entity itself is a defendant in the litigation, claims against specific individuals in their official capacities are redundant, and for that reason, Fifth Circuit courts have found it is appropriate to dismiss them. *See, e.g., Castro Romero v. Becken*, 256 F.3d 349, 355 (5th Cir. 2001); *Flores v. Cameron County, Tex.*, 92 F.3d 258, 261 (5th Cir. 1996).

Thus, even if the First Amendment retaliation and conspiracy claims were not time barred, the undersigned would recommend dismissal of those claims because they are against Mayor Bradford in his official capacity. These claims should be dismissed with prejudice.

## Conclusion

Louisiana is actively prosecuting Jonesboro for the violations Stringer complains of, thereby barring her citizen suit. The Takings Claim, First Amendment Retaliation Claim, and Conspiracy Claim fail because they are time barred.

**IT IS RECOMMENDED** that defendants' motion to dismiss [doc. # 33] be **GRANTED**, **DISMISSING WITH PREJUDICE**: 1) plaintiff's citizen suit under the Clean Water Act; 2) plaintiff's Section 1983 Takings claim; 3) plaintiff's Section 1983 First Amendment retaliation claim; and 4) plaintiff's Section 1985 conspiracy claim.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and F.R.C.P. Rule 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

In Chambers, at Monroe, Louisiana, this 3rd day of February 2020.

_____
KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE